DUGGAN v. THE COLORADO MORTGAGE AND INVESTMENT COMPANY.

As a general rule third persons will not be permitted to make a collateral attack upon the validity of a *de facto* corporation.

*Error to Superior Court of Denver.*

ON the 2d day of October, 1882, the defendant in error, a corporation, was the owner of the chattels here in controversy, consisting of printing-presses, engines, type, machinery and printing supplies.   Upon that day it sold and delivered the same to the World Printing and Publishing Company for the price of $1,840, and at the same time received from said company therefor $140, and seventeen notes for $100 each, and a chattel mortgage of the said chattels as security for the payment of said notes.   The notes and the chattel mortgage were executed under the corporate seal and in the name of the said the World Printing and Publishing Company, by Arthur Shepherd, as president, and W. C. Williams, as secretary, thereof, and the said chattels were then delivered to said company at the place it was carrying on the business of publishing a newspaper in Denver, called "The Evening World," and about the 2d day of March following, certain writs of attachment were issued by a justice of the peace against the property of said Arthur Shepherd and W. C. Williams, under which the said plaintiff in error, as constable, seized the said chattels. The said notes matured, one each succeeding month, after execution.   One of them had been paid.   The balance remained unpaid and were held by defendant in error. By the terms of the chattel mortgage, defendant in error, on such default, was entitled to have possession of the chattels; whereupon it made demand upon plaintiff in error for the chattels, and then replevied the same, and upon the trial of this action had judgment in its favor therefor.   The case comes here on error to reverse this judgment.   The plaintiff in error offered in evidence at the trial the original certificate of incorporation of the said the World Printing and Publishing Company, which had been filed in the office of the secretary of state, on the 6th day of April, 1882, and recorded there.   This cer-

tificate was regular in form, the statute requiring at least three incorporators. The requisite number of names, Arthur Shepherd, W. C. Williams and David Lescallett, were affixed thereto as incorporators, but there was no acknowledgment of said certificate attached thereto. This evidence was rejected by the court on motion of defendant in error. Plaintiff in error also offered to prove by said David Lescallett that he never signed nor authorized his name to the said certificate, which evidence was likewise rejected.

Messrs. SULLIVAN and MAY, for plaintiff in error.

Messrs. HUGH BUTLER and A. B. McKINLEY, for defendant in error.

PER CURIAM. A corporation *de facto* presupposes a charter, or a law authorizing the creation of such a corporation, that there has been an attempt in good faith to comply with its provisions, and that there has been user or the exercise of corporate powers under it. Against such a corporation, as a general rule, a collateral attack by third persons will not avail. The reason is that if rights and franchises have been usurped they are the rights and franchises of a sovereign, and he alone can interpose. Until such interposition the public may treat those possessing and exercising corporate powers under color of law as doing so rightfully. The rule is in the interest of the public, and is essential to the safety of business transactions with corporations. Ang. & A. Corp. §§ 635, 636; Abb. Tr. Ev. 18, 26; *Navigation Co. v. Neal*, 3 Hawks, 520; *Hudson v. Cemetery Corp.* 113 Ill. 618; *Tarbell v. Page*, 24 Ill. 46; *Turnpike Co. v. Cutler*, 6 Vt. 315; *Stout v. Zulick*, 48 N. J. Law, 600; 7 Atl. Rep. 362. In the case of *Railroad Co. v. Cary*, 26 N. Y. 77, it said: "Under this and similar general acts for the formation of corporations, if the papers filed, by which the corporation is sought to be created, are colorable, but

so defective that, in a proceeding on the part of the state against it, it would for that reason be dissolved, yet by acts of user under such an organization it becomes a corporation *de facto*, no advantage can be taken of such defect in its constitution, collaterally, by any person." In view of the doctrine stated and the relation which the parties to the suit sustained to the corporation, the existence of which was sought to be impeached, we think the evidence offered by the defendant was properly rejected. Although unacknowledged, the articles of incorporation were otherwise regular, and showed an attempt in good faith to comply with the provisions of the act. In the language of the authorities, they were colorable. There was an open and public exercise of corporate powers and rights by the World Printing and Publishing Company for several months prior to the date of the chattel mortgage and notes executed by it to the plaintiff. This was sufficient to authorize the plaintiff to deal with it as a corporation *de facto*, and to warrant the refusal of the court below to allow the defendant to attack its existence collaterally. We are aware of the distinction between mere omissions or irregularities, and what are called "prerequisites" of the statutes. The distinction may well be taken in a direct proceeding or other exceptional cases where strict proof is required, but we do not regard it as having any controlling place in the case at bar. What is or what is not a prerequisite is often a difficult question for a professional man, and much more for a layman, to determine. To cast such a burden upon the public as between its individual members is to lose sight of the reason for, and largely abrogate, the salutary rule respecting *de facto* corporations. Where a stricter rule is enforced it is generally upon some exceptional ground, as where persons are seeking in bad faith to avoid individual liability under cover of alleged incorporation. Mr. Abbott says: "The cases in which it is necessary to give strict proof of incorporations, that is, to prove not only the being, but

the right to be, are: (1) Actions by the state to ascertain or to put an end to corporate existence. (2) Proceedings by a private corporation, in the exercise of a franchise in derogation of common right; for instance, to divest title to private property. (3) Proceedings of a penal character by a private corporation. (4) Actions in contracts, like subscriptions for stock, if the very consideration is the legal organization of the corporation having a right to existence. In such cases the inquiry may extend to the due compliance with all the requirements of the law, but often, even in these cases, it is narrowed or precluded by estoppel or admission. (5) Where the question is whether there is corporate power to take by will, sufficient regularity of origin to show an attempt in good faith to comply with the law may be required." Abb. Tr. Ev. 19, § 3. What we have said applies not only to the offer to show that the articles of incorporation were unacknowledged, but likewise to the offer to show by Lescallett that he never signed the articles of incorporation. If such were the fact the defendant Duggan could not avail himself of it. The objection goes to the existence of the corporation *de jure*, not to its existence *de facto*, under colorable authority, upon which basis the plaintiff must be supposed to have dealt with it. We do not question the right of an alleged incorporator in his own behalf to put in issue the genuineness of his signature, but, so far as the general public is concerned, articles of incorporation purporting to be signed by certain incorporators must be deemed genuine until the sovereign power interposes. Upon like ground, evidence that a charter was obtained by fraud is held inadmissible. Abb. Tr. Ev. 31, § 26.

A point is made respecting certain admissions of counsel of the defendant in error upon the trial of the cause. We think the general admission of " all that is set up in the answer" must be taken as qualified by the specific statement made in the same connection, namely: " We simply admit that the defendant in this case claimed to

have possession under the writs he had in his hands. We do not admit that Mr. Williams and Shepherd had possession."

The judgment of the court below is affirmed.