## JONES v. THE ASPEN HARDWARE COMPANY.

1 CONSTITUTIONAL LAW—TITLE OF ACT.

A provision, in an act entitled "An Act to Fix the Fees to be Collected by the Secretary of State for Incorporation and Other Privileges," that, in addition to others relating to such fees, "no such corporation, etc., shall have or exercise any corporate powers or be permitted to do any business in this state until the said fee shall be paid," is sufficiently germane to the general subject to be a proper matter for legislation under the title selected.

2. CORPORATE CAPACITY—BURDEN OF PROOF.

As a general rule, when a company relies upon its corporate capacity it assumes the burden of establishing it.

3. CORPORATE POWER—PREREQUISITES TO ITS EXERCISE.

The taking of title to property by a corporation is the exercise of a corporate power, and, as such, is prohibited by the statute, unless its terms have been complied with.

4. CORPORATIONS DE FACTO.

To constitute a *de facto* corporation, there must be either a charter or a law authorizing the creation of such a corporation, with an attempt in good faith to comply with its terms, and also a user or attempt to exercise corporate powers under it.

5. SAME.

An association having failed to comply with the statute with respect to the payment of fees is neither a *de jure* nor a *de facto* corporation, but simply a voluntary association of individuals in the nature of a copartnership.

6. SAME—COLLATERAL ATTACK.

There is a broad distinction between those acts made necessary by the statute as a prerequisite to the exercise of corporate powers and those required of individuals seeking incorporation, but not made requisites. In respect to the former, any material omission will be fatal and may be taken advantage of collaterally. In respect to the latter, the corporation is responsible only to the government in a direct proceeding to forfeit the charter.

7. ASSOCIATION—PARTNERSHIP.

While, in this case, the plaintiffs' right of recovery as a corporation is denied, the right to maintain the action as a copartnership is recognized.

*Error to the District Court of Pitkin County.*

THE Aspen Hardware Company instituted this suit in the court below for the purpose of recovering a stock of goods seized by the United States marshal under a writ of attachment issued out of the circuit court of the United States at the suit of Joseph A. Thatcher, plaintiff, against one A. B. Eads. The only question in the case has reference to the corporate capacity of defendant in error, it not having filed, prior to the attachment levy, its certificate of incorporation with the secretary of state, as required by statute. Session Laws of 1887, p. 406. In the district court judgment was entered in favor of the company. The statute reads as follows:

"Every corporation, joint stock company or association, incorporated by or under any general or special law of this state, or by or under any general or special law of any foreign state or kingdom, or of any state or territory of the United States beyond the limits of this state, having capital stock divided into shares, shall pay to the secretary of state for the use of the state, a fee of ten dollars, in case the capital stock which said corporation, joint stock company or association, is authorized to have, does not exceed one hundred thousand dollars ; but, in case the capital stock thereof is in excess of one hundred thousand dollars, the secretary of state shall collect the further sum of ten (10) cents on each and every thousand dollars of such excess, and a like fee of ten cents on each thousand of the amount of each subsequent increase of stock. The said fee shall be due and payable upon the filing of the certificate of incorporation, articles of association, or charter of said corporation, joint stock company or association, in the office of the secretary of state ; and no such corporation, joint stock company or association *shall have* or exercise any corporate powers or be permitted to do any business in this state until the said fee shall have been paid ; and the secretary of state shall not file any certificate of incorporation, articles of association, charter or certificate of the increase of capital stock, or certify or give any certificate to any such corporation, joint stock company or association, until said fee shall have been paid to him. But this act shall not apply to corporations not for pecuniary profit, or corporations organized for religious, educational or benevolent purposes." Sec. 1, acts of 1887, p. 406.

Mr. A. B. McKINLEY, Mr. HUGH BUTLER and Messrs. WILSON & SALMON, for plaintiff in error.

Mr. H. W. CLARK and Mr. W. W. COOLEY, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

In November, A. D. 1889, Shepard & Bowles, as copart-
ners, were doing a general hardware business in the city of
Aspen, and during that month made a sale of their business,
stock in trade, good will, etc., to A. B. Eads, the consideration
for this transfer being certain real estate and the assumption
of certain indebtedness of the firm of Shepard & Bowles.
Eads being unable to comply with the terms of the agree-
ment, a new arrangement was made between the parties, and
an organization known as The Aspen Hardware Company
was formed by Bowles, Eads and one Kettler.   The articles
of incorporation provided that the affairs of the company
should be managed by a board of three directors, naming
Bowles, Eads and Kettler as such directors for the first year.
It was the evident intention of the parties that the company
should be duly and legally incorporated, and to this end they
caused to be executed articles of incorporation on the 16th
day of November, 1889, in due form, and immediately filed
the same with the clerk and recorder of Pitkin county.   For
some reason not explained by the evidence, the articles
were not filed in the office of the secretary of state until
after the levy of the writ of attachment hereinafter referred
to, and not until the day upon which this suit in replevin
was instituted, but whether before or after the commence-
ment of this action does not clearly appear from the evidence.

After the articles were filed with the county clerk, the
board of directors held a meeting, elected officers, caused
capital stock to be issued, etc., Eads being present and par-
ticipating in this meeting, at which Bowles was elected
president, Eads vice president, and Kettler secretary and
treasurer.   Thereupon, Eads, for a valuable consideration,
sold and transferred the property to the new organization,
and Mr. Bowles from that time forward conducted the busi-
ness for The Aspen Hardware Company, selling goods and
purchasing new goods in the corporate name.   Eads, soon
after the sale, left the town of Aspen and did not return, nor
personally take part in the business at that point, but con-
tinued as a director and vice president of the company, and

retained a portion of his stock, although he had sold a part of it prior to the levy of the writ of attachment.

The business was thus continued until July 31, 1890, when a suit was commenced by Thatcher, plaintiff, against A. B. Eads, and the property in question levied upon as the property of the defendant in that suit, and this action of replevin was immediately instituted to recover possession of the property, or its value.

The controversy in 'this case is narrowed to the single question of the capacity of defendant in error to take title to the property in controversy as a corporation at the time of the attempted transfer by Eads, it not having at that time filed its articles of incorporation with the secretary of state, or paid the fee for such filing, as provided by the statute of 1887.  Session Laws of 1887, p. 406.

This is the first time the effect of this statute has been before this court for consideration, although in *Edwards v. D. & R. G. R. Co.*, 13 Colo. 59, the constitutionality of a somewhat similar act was under review.  That act was attacked upon several grounds, among which was that it was void because the subject was not clearly expressed in the title, the title being " An Act to Provide for the Formation of Corporations," and it was held that this title was sufficient to cover legislation requiring a fee to be paid for filing the certificate of incorporation, under the principle that the same was germane to the general subject expressed in the title, and that legislation fixing the amount of such fee, time of payment, etc., was not obnoxious to the constitutional provision with reference to titles.  The act of 1887, now under consideration, is entitled " An Act to Fix the Fees to be Collected by the Secretary of State for Incorporation and Certain Other Privileges."  The body of the act, however, relates entirely to the fee to be charged and collected for filing certificates of incorporation, articles of association, charters, or increase of capital stock of joint stock companies, and in addition thereto provides that no such corporation, joint stock company or association " *shall have or exercise any*

*corporate powers or be permitted to do any business in this state
until the said fee shall have been paid * * *."* This provision
is so closely allied to the general subject, which is the fixing
of fees for filing certificates of incorporation, etc., that under
the uniform rule of decisions in this state it must be held to
be a proper matter for legislation under the title selected.
*Golden Canal Co. v. Bright,* 8 Colo. 144; *People ex rel.
Thomas v. Goddard,* 8 Colo. 432; *People ex rel. Thomas v.
Scott,* 9 Colo. 422; *Dallas v. Redman,* 10 Colo. 297; *Edwards
v. D. & R. G. R. Co., supra; In re Pratt,* 19 Colo. 138.

In this case The Aspen Hardware Company claims title to
the property in dispute in its corporate capacity, and not as
a copartnership. It is admitted that the fee for filing the
certificate of incorporation with the secretary of state was
not paid prior to the levy of the writ of attachment, and
that the certificate was not filed in the office of the secretary
of state until about the time of the bringing of the present
action, the evidence leaving the exact time uncertain.

It is to be remembered that in this case the corporation is
the party plaintiff, and it may be stated, as a general rule,
that when a company relies on its corporate capacity it as-
sumes the burden of establishing such capacity.

The language of the act is plain and unambiguous. It
reads, "no such corporation * * * shall have or exercise
any corporate powers * * *." The taking of title to prop-
erty was certainly the exercise of a corporate power, and as
such prohibited by the express terms of the statute. This
is not controverted by counsel for appellee, but it is con-
tended that Eads having assisted in the organization of the
corporation, and having sold to it the hardware stock, is
estopped from denying the corporate existence of the com-
pany, and that the attaching creditor took the property sub-
ject to the same estoppel.

The doctrine of estoppel cannot be successfully invoked,
we think, unless the corporation has at least a *de facto* exist-
ence. The rule is stated as follows by Morawetz on Pri-
vate Corporations, sec. 750, it having been first announced

in the the case of *Brouwer v. Appleby*, 1 Sandf. 158: "A defendant who has contracted with a corporation *de facto* is never permitted to allege any defect in its organization as affecting its capacity to contract or sue, but that all such objections, if valid, are only available on behalf of the sovereign power of the state."

It is also well settled that to constitute a *de facto* corporation there must be either a charter or a law authorizing the creation of such a corporation, with an attempt in good faith to comply with its terms, and also a user or attempt to exercise corporate powers under it. *Duggan v. The Colo. Mort. & Inv. Co.*, 11 Colo. 113 ; *Bates et al. v. Wilson et al.*, 14 Colo. 140.

A *de facto* corporation can never be recognized in violation of a positive law. This principle, which seems to be supported by all the authorities, is thus stated by Morawetz on Private Corporations, sec. 758 : "If the formation of a corporate association is not only prohibited by this general rule of the common law, but is also in violation of some principle of morality or public policy, or *a positive statutory prohibition*, the parties forming such association will not be legally bound by their agreement of membership, and the courts will not recognize the association, either as among its members or against third parties." To recognize the defendant as a *de facto* corporation, would, as we have seen, be in direct conflict with the express language of the act, which declares that without the payment of the fee the corporation shall have no corporate power.

One object of this statute is to restrict the organization of " wild-cat " corporations, it being supposed that the increased fee required by the act would, in a measure at least, prevent the overcapitalization of companies. The legislature being of the opinion that this purpose would be advanced by requiring the fee to be paid as a condition precedent to the exercise of any corporate power, it is the duty of the courts to give effect to this intent as the same is manifest from the plain language of the act.

The taking of title to the property in controversy being the exercise of a corporate power, and, as such, forbidden until the fee for filing has been paid, it follows that the title of The Aspen Hardware Company as a corporation cannot be upheld. Having failed to comply with the statute, The Aspen Hardware Company at the time of the transfer was neither a *de jure* nor a *de facto* corporation, but simply a voluntary association of individuals in the nature of a copartnership.

There is a broad distinction between those acts made necessary by the statute as a prerequisite to the exercise of corporate powers and those acts required of individuals seeking incorporation, but not made prerequisites to the exercise of such powers.

"In respect to the former, any material omission will be fatal to the existence of the corporation, and may be taken advantage of collaterally, in any form in which the fact of incorporation can properly be called in question. In respect to the latter, the incorporation is responsible only to the government in a direct proceeding to forfeit the charter." *Abbott v. Omaha Smelting & Refining Company*, 4 Neb. 416. The omission in this case is of acts of the former class, and consequently there was no corporation *in esse* at the time of the levy of the writ, while the evidence leaves it in doubt if this omission had been supplied prior to the institution of the present action.

But although it could not at the time exercise any corporate power, this did not prevent The Aspen Hardware Company from taking title to the property as a copartnership. In other words, under the conceded facts, the company was not at the time a corporation, but this will not preclude it from maintaining the action as a copartnership. The plaintiff sues as The Aspen Hardware Company, and the facts alleged show that such company was a copartnership and not a corporation. There is nothing in the name of the association to conflict with this, as at common law partners may carry on business under any name they choose. They are bound

rather by their acts than by the style which they give to themselves.    Cook on Stock and Stockholders, sec. 233; *Chaffee v. Ludeling*, 27 La. Ann. 607.

This principle has been applied in many cases where parties have set up the defense of individual nonliability by reason of having directed an incorporation to be had, but where none in fact was consummated.    Cook on Stock & Stockholders, secs. 233, 234; *Abbott v. Omaha Smelting & Refining Co.*, *supra*; *Empire Mills v. Alston Grocery Co.*, 15 S. W. Rep. 505 (Texas).

The law having cast this liability upon the members of the association, we think they must be given the advantages accorded a copartnership.    So, in this case, while we feel compelled under the statute to deny plaintiff's right of recovery as a corporation, we think they may maintain the action as a copartnership.    The cause will accordingly be reversed and remanded, with directions to the district court to allow the parties to amend their pleadings as they may be advised.

*Reversed.*